**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3070-22

CHALLENGER ACRES, LLC,

     Plaintiff-Respondent,

v.

JAMES E. BAXTER and FELICE
CARPENTER BAXTER,

     Defendants-Appellants,

and

RICHARD STINSON and KATIE
STINSON,

     Defendants-Respondents.

_____

> Argued October 16, 2024 – Decided November 7, 2024
>
> Before Judges Chase and Vanek.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Hunterdon County, Docket No. C-014039-21.
>
> David B. Rubin argued the cause for appellants.

Douglas A. Stevinson argued the cause for respondent Challenger Acres, LLC (Windels Marx Lane & Mittendorf, LLP, attorneys; Douglas A. Stevinson, of counsel and on the brief).

PER CURIAM

Defendants James E. Baxter and Felice Carpenter Baxter ("Baxters") appeal from a March 16, 2023 order granting summary judgment to plaintiff Challenger Acres LLC ("Challenger") and denying their cross-motion for summary judgment. Challenger commenced this declaratory judgment action in the Chancery Division alleging entitlement to an express easement to a public street across nearby lots owned, respectively, by defendants and Richard Stinson and Katie Stinson[1] ("Stinsons"). We affirm.

I.

Challenger acquired Block 27, Lot 45 ("Challenger Lot") in East Amwell, from Corwin Roth and Beth Roth in 2020. The Roths acquired the Challenger Lot from Brian Trunell, Beth Roth's brother, in 2009. Trunell and Beth purchased the lot together in 2003 from representatives of the Estate of Stephen Kovac. Challenger's sole owner is Jamie Rowe. The Challenger Lot has no

___

[1] The Stinsons do not take part in this appeal as cross-motions for summary judgment regarding their lot were denied as the Chancery Judge found there were material facts in dispute.

frontage to a public street and is completely landlocked. Rowe purchased the Challenger Lot with the intention of demolishing the existing structures and constructing a new single-family home to serve as his family's primary residence.

The Baxters own Block 27, Lots 43 and 44 ("the Baxter Lots") in East Amwell. Until 1966, the Baxter Lots consisted of two separate parcels referred to as the North Baxter Lot and the South Baxter Lot. Access to or over the North Baxter Lot, where the Baxters's house is located, is not the subject of this appeal. The subject of this appeal is the South Baxter Parcel, first created in 1955, when Frederick H. Totten and Madge E. Totten conveyed the land to Sanford L. Hillpot and Margaret E. Hillpot ("Hillpot"). The South Baxter Parcel was thereafter conveyed by Hillpot to Margaret P. Totten in 1965. In 1966, Margaret Totten and Fred Totten, then owners of the South Baxter Lot, conveyed the lot to Jan Liniewicz and Helen Liniewicz, who had recently acquired the North Baxter Lot resulting in common ownership of the two parcels. The 1966 Totten-to-Liniewicz deed to what was then the South Baxter Lot contained the following recital:

> Excepting and reserving from the above the rights of the public or owners of property lying westerly and southerly of Totten farm to use a roadway or driftway

3

running thru this tract to reach their properties from the
public road mentioned in the description above.

The land referred to above as "Totten farm" is currently owned by the Stinsons ("Stinson Lot"). The parties have stipulated that the Challenger Lot is the land situated to the west and south of the Totten farm, the Stinson Lot. The Challenger Lot does not share a common border with the Baxter Lots. The Stinson lot is situated between the Challenger Lot and the Baxter Lots.

From 1971 onward, the Baxter Lots changed ownership several times until Baxter purchased them in 1990. The intervening deeds[2] included abridged versions of the 1966 deed recital. By the time Baxter took ownership, the reference to the driftway in his deed read, simply, "subject to the rights of others, if any, in an old driftway crossing the southerly portion of the above-described lot."

Prior Litigation.

In 2005, Trunell, Challenger Lot's predecessor in interest, filed a lawsuit ("Trunell suit") against Baxter and several nearby landowners, seeking a "determination [that he] is entitled to a right of residential access to and from his property over the lands of one or more of the [d]efendants." Trunell's

---

[2] Both the North and South Lots have been transferred in the same deed since 1971.

A-3070-22

complaint consisted of two counts. The first, against all parties but Baxter, pled a claim for implied easement by necessity. The second, solely against Baxter, sought an implied easement by prescription. In November of 2005, Trunell voluntarily dismissed the first count, leaving only the implied easement by prescription claim against Baxter. After both parties cross-moved for summary judgment, the court granted Baxter summary judgment and dismissed Trunell's claim with prejudice.

Shortly afterward, Trunell reinstated his complaint against one of the other defendants, Harrison[3] ("Harrison Suit"), seeking an easement by necessity over that property. Following trial, the court issued another opinion and order rejecting Trunell's claims. The court found Trunell was not entitled to an easement by necessity over Harrison's land. Addressing Trunell's claim for an easement by prescription, the court found that Trunell also failed to offer the court any evidence that he satisfied the prima facie elements to obtain that relief. Trunell appealed that decision, which we affirmed. Trunell v. Trust for Hazel Harrison, A-1066-08 (App. Div. Mar. 16, 2010).

Present Litigation.

---

[3] Harrison owned an adjacent lot, neither the Baxter nor Stinson lot.

A-3070-22

Challenger commenced this suit seeking declaratory judgment to confirm its right to use the roadway to access its property based on the recorded land filings in Hunterdon County. Challenger thereafter filed two amended complaints to amend the parties. Baxter's answer asserted seven affirmative defenses consisting of: (i) failure to state a claim upon which relief can be granted; (ii) res judicata; (iii) collateral estoppel; (iv) entire controversy doctrine; (v) laches; (vi) unclean hands; and asserted (vii) "damages" are barred by the doctrine of waiver. The Baxters also pled a counterclaim for declaratory judgment that Challenger has no right to use the roadway to cross their property. The Stinsons also filed a responsive pleading wherein they repeated appellants' defenses and added the additional defenses of abandonment, statute of limitations and that the Stinson's property (Totten farm) is now encumbered by a Deed of Easement and Farmland Preservation Agreement.

Following discovery, the parties filed cross-motions for summary judgment. Challenger argued that its right to an express easement was explicitly granted by way of a reservation in a deed to one of Baxter's predecessors in title. Baxter disputed that claim and argued that Challenger's action was precluded by res judicata, collateral estoppel, and the entire controversy doctrine because of the earlier litigation brought by Trunell. Stinson argued there was no express

6

grant over Stinson's lot and all claims were barred by the prior litigation. In an order and statement of reasons issued March 16, 2023, the court found that Challenger enjoyed an enforceable easement by reservation over Baxter's property based on the deed in Baxter's chain of title and granted summary judgment against Baxter.[4]

In issuing its decision, the trial court held that in regard to the Challenger Lot, no easement appears in any of the deeds. Regarding the Baxter Lot, the court recounted the language as originally written and as abridged. The trial court, citing to Van Horn v. Harmony Sand and Gravel, Inc., 442 N.J. Super. 333, 345 (App. Div. 2015), held the deletion of the language and formation of the abridged version was a "legal nullity because an easement is subject to modification or termination only by agreement of the parties, or abandonment, prescription, merger, estoppel, or renunciation by the holder of the easement." Moreover, the court held that Baxter would have had notice due to the abridged language, and therefore absent any defenses, Challenger had established the existence of an express easement by reservation and "may traverse the South Baxter lot to reach Plaintiff's Lot."

---

[4] Summary judgment was denied against Stinson and that matter is still pending.

A-3070-22

The trial court then analyzed Baxter's defenses of res judicata, collateral estoppel, and the entire controversy doctrine. In denying res judicata, the court held that the two causes of action and issues in the Trunell suit were not "substantially similar or identical" and the theories advanced by Trunell did not require "any analysis of the deed's language; in fact, these theories provide redress where the express language of the deed does not contain an easement." In contrast, the court determined the theory alleged by Challenger, "contends that it was expressly reserved the right to use the land." The court further determined that the relief was not substantially similar or identical because Trunell had focused on an easement by prescription or necessity, and Challenger, by aiming to enforce the express easement, was seeking "the exact opposite." The trial court also made the same finding, that Trunell never raised the theory he was entitled to access the property based on the language in the 1966 Totten-to-Liniewicz deed, when analyzing the factors and denying that collateral estoppel applied.

Next, the trial court recounted that the entire controversy doctrine was an equitable doctrine that was left to judicial discretion. The court noted it was tasked with determining the fairness, at the expense of New Jersey's recording statute, of applying the entire controversy doctrine to bar Challenger's claims.

8

The court held it would be "unfair to deny plaintiff the ability to enforce the clear and unambiguous easement reservation recorded in Baxter's chain of title just because Trunell did not rely on an express easement theory in his earlier litigation."

After the court issued its ruling in favor of Challenger, Baxter requested that the court conduct further proceedings to determine what specific uses Challenger may make of the easement. Challenger's counsel opposed that request and submitted a proposed order memorializing the express easement and directing the Clerk of Hunterdon County to record it. Although Baxter objected, on June 5, 2023, the court entered Challenger's proposed order along with a separate order deeming its summary judgment finding "final as to the Baxter defendants as of today, so as to allow them to exercise any appellate rights they deem appropriate."

This appeal follows.

## II.

We review de novo orders granting summary judgment, applying the same standard that governed the trial court's ruling. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). Summary judgment will be granted if, viewing the competent evidential materials in the light most favorable to the non-moving party, "there

A-3070-22

is no genuine issue of material fact and 'the moving party is entitled to a judgment or order as a matter of law.'" Conley v. Guerrero, 228 N.J. 339, 346 (2017) (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)). We are mindful "[a]n issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Rule 4:46-2(c); see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

## III.

On appeal, the Baxters argue that the trial court erred by finding a reservation of an easement in favor of strangers to the deed. Baxter also contends Challenger's claim was precluded by res judicata, collateral estoppel and the entire controversy doctrine. In the alternative, Baxter asks that the matter be remanded for the trial court to consider relevant issues that it did not address.

## A.

An easement is a "nonpossessory incorporeal interest in another's possessory estate in land, entitling the holder of the easement to make some use

10

of the other's property." Leach v. Anderl, 218 N.J. Super. 18, 24 (App. Div. 1987).  The landowner burdened by the easement, or the servient owner, "may not, without the consent of the easement holder, unreasonably interfere with the [other party's] rights or change the character of the easement so as to make the use thereof significantly more difficult or burdensome."  Tide-Water Pipe Co. v. Blair Holding Co., 42 N.J. 591, 604 (1964).  "Equally well recognized is the corollary principle that there is, arising out of every easement, an implied right to do what is reasonably necessary for its complete enjoyment, that right to be exercised, however, in such a reasonable manner as to avoid unnecessary increases upon the landowner."  Ibid.

At common law, an easement in favor of a third person could not be created by reservation or exception.  What has come to be known as the "stranger-to-the-deed" rule presumes that deeds conveying land are between a grantor and a grantee, and views with distrust any attempt to use the deed to create a property interest in any other party, i.e., a "stranger."  Conway v. Miller, 232 P.3d 390, 397 (2010).  We have already considered and rejected the common law approach in Borough of Wildwood Crest v. Smith, 210 N.J. Super 127, 144 (App. Div. 1986), in favor of the approach espoused in the Restatement 3rd of Property whereby the court derives the intention of the grantor using the words

11

used and attending circumstances. We see no reason to reverse course and return to the common law stranger-to-the deed rule.

B.

Baxter argues on appeal that the trial court erred in not precluding Challenger's claims under res judicata, collateral estoppel and the entire controversy doctrine by virtue of the 2006 and 2008 judgments entered in the Trunell litigation. We review trial courts' decisions to invoke judicial estoppel for an abuse of discretion, Terranova v. GE Pension Tr., 457 N.J. Super. 404, 410 (App. Div. 2019); In re Declaratory Judgment Actions Filed by Various Muns., 446 N.J. Super. 259, 291 (App. Div. 2016), and review de novo a decision on res judicata and collateral estoppel. Selective Ins. Co. v. McAllister, 327 N.J. Super. 168, 173 (App. Div. 2000).

Res Judicata.

"Res judicata prevents relitigation of a controversy between the parties." Brookshire Equities, LLC v. Montaquiza, 346 N.J. Super. 310, 318 (App. Div. 2002). "The rationale underlying res judicata recognizes that fairness to the defendant and sound judicial administration require a definite end to litigation." Velasquez v. Franz, 123 N.J. 498, 505 (1991) (citing Restatement (Second) of Judgments § 19 cmt. a (Am. L. Inst. 1982)) (emphasis omitted).

For res judicata to apply, there must be "(1) a final judgment by a court of competent jurisdiction, (2) identity of issues, (3) identity of parties, and (4) identity of the cause of action." Brookshire Equities, 346 N.J. Super. at 318. Application of the doctrine is "a question of law 'to be determined by a judge in the second proceeding after weighing the appropriate factors bearing upon the issue.'" Selective Ins. Co., 327 N.J. Super. at 173 (quoting Colucci v. Thomas Nicol Asphalt Co., 194 N.J. Super. 510, 518 (App. Div. 1984)).

The trial judge found no identity of issues nor causes of action because the Trunell litigation "focused on plaintiff's purported right to enter the land by prescription or by necessity[,]" not express language contained in a deed. The trial judge also found that the requisite final adjudication was lacking because the portion of the first trial judge's opinion addressing Trunell's express easement claim was merely dicta "based on incomplete facts, on theories not raised in the complaint," and the fact that the 1966 Totten-to-Liniewicz deed was never presented to that court.

Collateral Estoppel.

"The doctrine of collateral estoppel is a branch of the broader law of res judicata which bars relitigation of any issue actually determined in a prior action generally between the same parties and their privies involving a different claim

or cause of action." Figueroa v. Hartford Ins. Co., 241 N.J. Super. 578, 584 (App. Div. 1990) (emphasis omitted). For the doctrine to apply, the party asserting the bar must show:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [In the Matter of the Estate of Dawson, 136 N.J. 1, 20 (1994) (citations omitted).]

It is equally clear that "even [when] these requirements are met, the doctrine, which has its roots in equity, will not be applied when it is unfair to do so." Pace v. Kuchinsky, 347 N.J. Super 202, 215 (App Div. 2002).

"Although collateral estoppel overlaps with and is closely related to res judicata, the distinguishing feature of collateral estoppel is that it alone bars relitigation of issues in suits that arise from different causes of action." Selective Ins. Co., 327 N.J. Super. at 173 (citing United Rental Equip. Co. v. Aetna Life and Cas. Ins. Co., 74 N.J. 92, 101 (1977)) (emphasis omitted). Indeed, collateral estoppel "requires a similar, yet less demanding, analysis than

res judicata or claim preclusion." First Union Nat'l Bank v. Penn Salem Marina, Inc., 190 N.J. 342, 352 (2007).

"In brief, [res judicata] applies to all claims growing out of the same facts that could have been brought, but [collateral estoppel] applies only to those issues that were actually litigated and decided." Watkins v. Resorts Int'l Hotel & Casino, 124 N.J. 398, 422 (1991). Under collateral estoppel, then, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Ibid. (quoting Restatement (Second) of Judgments § 27). The doctrine "is not subject to rigid application but may be applied after a careful assessment and consideration of all relevant factors both in support of and against its application." Selective Ins. Co., 327 N.J. Super. at 174; see also Kuchinsky, 347 N.J. Super. at 215 (reasoning collateral estoppel "has its roots in equity, [and] will not be applied when it is unfair to do so").

Entire Controversy Doctrine.

The entire controversy doctrine is an equitable doctrine left to the sound discretion of the court based on the factual circumstances of individual cases. See Bank Leumi USA v. Kloss, 243 N.J. 218, 227 (2020). "The entire

15

controversy doctrine generally requires parties to an action to raise all transactionally related claims in that same action." Largoza v. FKM Real Estate Holdings, Inc., 474 N.J. Super. 61, 79 (App. Div. 2022); Carrington Mortg. Servs., LLC v. Moore, 464 N.J. Super. 59, 67 (App. Div. 2020); see also Pressler & Verniero, Current N.J. Rules, cmt. 1 on R. 4:30A (2023). Specifically, under Rule 4:30A "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine . . . ."

Even where the doctrine is otherwise applicable, a court has the discretion not to apply it when doing so would be inequitable on the facts of a particular case, or it would not promote the doctrine's underlying goals. Carrington Mortg. Services, LLC, 464 N.J. Super. at 68. The trial court felt it would be inequitable to apply it in this case.

In Fisher v. Yates, another case involving an owner of landlocked property seeking an access easement across a neighbor's land, we held the recording statute, which also put Baxter on notice of the 1966 deed in his chain of title, put the plaintiff in Fisher on notice of recorded instruments in his neighbor's chain of title. 270 N.J. Super. 458, 471 (App. Div. 1994). Thus, when Trunell

purchased the Challenger Lot, as a matter of law he had notice of the 1966 Totten-to-Liniewicz deed in Baxter's chain of title.

C.

Baxter contends the matter should be remanded to the trial court to address what uses and activities are permissible before Challenger is permitted to move forward with whatever plans it may have since the cross-motions for summary judgment focused on the abstract question whether the 1966 Totten-to-Liniewicz deed gave Challenger legally enforceable easement rights across Baxter's property. Baxter further posits the litigation to that point did not address what Challenger could do with the easement if found to exist. We "will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)). Since this was not pled below and was only raised to the trial court by letter after the court made its final determination that Challenger had access over Baxter's property, we decline to remand the matter.

IV.

17

To the extent we have not specifically addressed any other contentions raised by defendant, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3070-22